| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CRIMINAL ACTION NO. 4:17-CR-196 |
| | § | |
| ERYN PRESSLEY | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Eryn Pressley's ("Pressley") *pro se* Motion for Modification of Term of Imprisonment (#98). United States Probation and Pretrial Services ("Probation") has conducted an investigation and recommends denying the motion. The Government opposes Pressley's request. Having considered the Motion, Probation's recommendation, the Government's Response, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I. Background

Pressley is currently serving a 87-month term of imprisonment, which was imposed after she pleaded guilty to Possession of a Firearm by a Felon, in violation of 18 U.S.C. § 922(g), stemming from her possessing a loaded revolver while committing a drug offense. The firearm was seized from her hotel room where officers recovered 24.5 net grams of methamphetamine "Ice," digital scales, and drug packaging materials. Pressley is currently housed at the Federal Medical Center ("FMC") Carswell's Satellite Camp, in Fort Worth, Texas.[1] In her motion,

---

[1] As of June 23, 2020, COVID-19 figures available at www.bop.gov, which provides information on which institutions currently have positive COVID-19 inmates/staff, indicate that 0 inmates and 1 staff at FMC Carswell have "confirmed active cases" of the virus and, according to Probation, there have been no positive cases of COVID-19 at FMC Carswell's Satellite Camp.

Pressley contends that she is concerned about the spread of COVID-19 throughout the Federal Bureau of Prisons ("BOP") in light of her underlying health conditions, which include Neuroendocrine Carcinoid Syndrome (cancer), Antiphospholipid Syndrome (a blood clotting disorder), Autoimmune Disorder (not specified), Embolism and Thrombosis of Artery, Esophagitis, and Gastro-Esophageal Reflux Disease.  Probation confirms these diagnoses and adds that she has also been diagnosed with Crohn's disease.  Probation further explains that Pressley is a Care Level 3 inmate because she is prescribed Coumadin, a blood thinner, for her blood clotting disorder, which is stable at this time.  Pressley requests immediate release to home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

II.     Analysis

On December 21, 2018, the President signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission
> . . . .

2

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W. Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release."). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, No. 20-1298, 2020 WL 2845694, at *2 (6th Cir. June 2, 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of her facility to move for compassionate release on her behalf and then either exhaust her administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Alam*, 2020 WL 2845694, at *2; *Raia*, 954 F.3d at 597. Here, it appears that Pressley exhausted her administrative remedies by filing a request with the warden of her facility on April 1, 2020.

Probation reports that the warden denied her request on April 7, 2020. Nevertheless, the court finds that no extraordinary and compelling reasons justify modifying Pressley's sentence.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[2] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C § 3582(c)(1)(A). The policy statement

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

    A.    <u>Defendants' Medical Conditions</u>

The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Here, Pressley's Presentence Report verifies, and Probation confirms, that she has been diagnosed with Neuroendocrine Carcinoid Syndrome (cancer), Antiphospholipid Syndrome (a blood clotting disorder), and Crohn's Disease. This medical summary does not meet the criteria listed above. In addition, Probation reports that she is receiving treatment for these afflictions and that her health condition is considered stable. Although significant, none of these medical conditions is terminal or substantially diminishes her ability to provide self-care. Hence, Pressley has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce her sentence. Further, Pressley is now receiving a higher level of care at FMC Carswell, indicating that the facility has taken her medical conditions into account while providing appropriate care during the pandemic.

B.  Defendant's Age

The USSG provides that extraordinary and compelling reasons exist as to a defendant's age when:

> [t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13, cmt. n.1(B). Here, according to Pressley's instant motion, she is 49 years of age, well below the minimal threshold of 65 years. Moreover, as of the date of her motion, Pressley had served 22 months or 26 percent of her 87-month sentence, far less than the lesser of 10 years or 75 percent of her term of imprisonment.

C.  Other Reasons

In the instant motion, Pressley contends that she is eligible for compassionate release due to her age and medical vulnerability to COVID-19. Although Pressley expresses legitimate concerns regarding COVID-19, she does not establish that the BOP cannot manage the outbreak within her correctional facility or that the facility is specifically unable to treat her, if she were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5

(W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Pressley has failed to establish that her medical condition, age, or any other reasons constitute extraordinary and compelling reasons to warrant her release from imprisonment. Furthermore, in view of Pressley's extensive criminal history, the court cannot conclude that she would not pose a danger to any other person or to the community, if released.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See Collins*, 2020 WL 1929844, at *3. As of June 23, 2020, the BOP has placed 4,414 inmates on home confinement. The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without

authority to order home confinement. 18 U.S.C. § 3621(b); *Castillo*, 2020 WL 3000799, at *3; *see United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)). Here, Pressley's track record is similarly a poor one.

Indeed, Pressley has a lengthy criminal history dating from 1995, including prior convictions for insufficient funds and bad checks (14), theft (2), bank fraud, and possession of a controlled substance (2). Moreover, Pressley's prior term of supervised released imposed for her federal bank fraud conviction was revoked on three occasions due to her testing positive for methamphetamine twice, failing to attend scheduled mental health sessions, and failing to pay restitution. The Presentence Investigation Report indicates that she reported the frequent use of methamphetamine during the 6 years preceding her arrest. In addition, Pressley was on state probation at the time of her offense of conviction. Finally, at a detention hearing held in December 2017, the magistrate judge determined that she was a danger to the community if not detained pending trial, finding by clear and convincing evidence that "no condition or combination of conditions of release will reasonably assure the safety of any other person and the community." Thus, the court also finds that compassionate release is not warranted in light of the applicable factors set forth in § 3353(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release).

In short, Pressley has failed to satisfy her burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See Koons*, 2020 WL 1940570, at *4-5 (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Id.*

III.  Conclusion

Consistent with the foregoing analysis, Pressley's Motion for Modification of Term of Imprisonment (#98) is DENIED.

SIGNED at Beaumont, Texas, this 24th day of June, 2020.

*Marcia A. Crone*

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE